**RECORD NO. 14-4119**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARCELLUS EDWARD CHEATHAM, III,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NEWPORT NEWS

**OPENING BRIEF OF APPELLANT
MARCELLUS EDWARD CHEATHAM, III**

Vaughan C. Jones
JOHNSON & JONES, LLP
1622 West Main Street
Richmond, Virginia 23220-4633
(804) 788-8880
vjones@johnsonjoneslaw.com

*Counsel for Appellant*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ........................................................... iii

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES........................................................1

STATEMENT OF THE CASE........................................................2

STATEMENT OF FACTS ........................................................ 4

SUMMARY OF ARGUMENT ........................................................6

STANDARD OF REVIEW ........................................................9

ARGUMENT ........................................................10

    I.    THE DISTRICT COURT ABUSED ITS DISCRETION BY REFUSING TO GRANT A MISTRIAL OR OFFER A CURRATIVE INSTRUCTION AFTER THE PROSECUTION IGNORED ADMOSHMENT BY THE COURT AND MADE REPEATED REFERENCES TO PUNISHMENT PROVISONS IN FRONT OF THE JURY ........................................................10

    II.    THE TRIAL COURT ERRED BY NOT SUPRESSING EVIDENCE FOUND AFTER ILLEGAL ENTRY AND SEARCH OF THE APPELLANT'S HOME ........................................................15

    III.    THE TRIAL COURT ERRED IN FINDING THAT SUFFICIENT EVIDENCE EXISTED TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT WAS GUILTY OF 18 U.S.C. § 924(c)(1) ........................................................19

    IV.    THE TRIAL COURT ERRED IN FINDING THAT SUFFICIENT EVIDENCE EXISTED TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT WAS GUILTY OF 18 U.S.C. § 922(g)(1) ........................................................23

i

V.   THE TRIAL ERRED BY ENHANCING THE APPELLANT'S SENTENCE LEVEL BASED UPON HIS ROLE IN THE ROBBERY ...............................................................................26

VI.  THE TRIAL COURT ERRED BY ENHANCING THE APPELLANT'S SENCE LEVEL BASED UPON OBSTRUCTION UNDER USC § 3C1.1...............................................................30

VII. THE TRIAL COURT ERRED BY NOT GRANTING THE APPELLANT CREDIT FOR ACCEPTANCE OF RESPONSOBILTY ...................................................................34

CONCLUSION.....................................................................38

CERTIFICATE OF COMPLIANCE.................................................39

CERTIFICATE OF FILING AND SERVICE ...................................40

ii

# TABLE OF AUTHORITIES

## CASES

Page

Carter v. United States,
    487 U.S. 533, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988.) ............................19

Delli Paoli v. United States,
    352 U.S. 232 (1957)...............................................................................14

Elkins v. United States,
    364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960) ............................18, 19

Elliott v. United States,
    332 F.3d 753 (4th Cir.2003) ............................................................34

Maryland v. Buie,
    494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990) ............................16

Nix v. Williams,
    467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984) ................................18

Payton v. New York,
    445 U.S. 573 (1980)...............................................................................15

Rita v. United States,
    551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007) ............................30

Smith v. Tolley,
    960 F. Supp. 977 (E.D. Va., 1997) ....................................................15

United States v. Slade,
    631 F.3d 185 (4th Cir. 2011) .................................................... 9, 26, 29 **MOVE**

United States v. Adam,
    70 F.3d 776 (4th Cir. 1995) ............................................................10

United States v. Alerre,
    430 F.3d 681 (4th Cir. 2005) ...........................................................9

United States v. Bartley,
    230 F.3d 667 (4th Cir. 2000) ..........................................................................26

United States v. Baylor
    352 F.3d 908 (4th Cir. 2013) ..........................................................................21

United States v. Calandra,
    414 U.S. 338 (1974).........................................................................................18

United States v. Cartrette,
    (4th Cir. 2012).................................................................................................31

United States v. Castillo,
    924 F.2d 1227 (2d Cir.1991) ...........................................................................20

United States v. Chambers,
    985 F.2d 1263 (4th Cir.1993) ..........................................................................27

United States v. Chong Lam,
    102 U.S.P.Q. 2d 1937, 677 F.3d 190 (4th Cir. 2012).....................................11

United States v. Dorsey,
    45 F.3d 809 (4th Cir. 1995) ...............................................................................9

United States v. Dunnigan,
     507 U.S. 87 (1993).........................................................................................31

United States v. Ferg,
    504 F.2d 914 (5th Cir.1974) ............................................................................24

United States v. Hargrove,
    478 F.3d 195 (4th Cir. 2007) ...............................................................34, 35, 34

United States v. Harrison,
    716 F.2d 1050 (4th Cir. 1983) .........................................................................10

United States v. Higgs,
    353 F.3d 281 (4th Cir.2003) ............................................................................11

United States v. Japanese Rifle,
    571 F. Supp. 2d 685 (E.D. Va., 2008) ......................................................24, 25

United States v. Jackson,
    124 F.3d 607 (4th Cir.1997) ..............................................................................24

United States v. Jeffers,
    342 U.S. 48 (1951) ..............................................................................................15

United States v. Jones,
    308 F.3d 425 (4th Cir. 2002) ..............................................................................31

United States v. Jones,
    667 F.3d 477 (4th Cir. 2012) ..............................................................................16

United States v. Jones,
    907 F.2d 456 (4th Cir. 1990) .......................................................................14, 21

United States v. Lawing,
    703 F.3d 229 (4th Cir, 2012) ..............................................................................24

United States v. Leon,
    468 U.S. 897 (1984) ............................................................................................18

United States v. Lewis,
    606 F.3d 193 (4th Cir.2010) .................................................................................9

United States v. Lighty,
    616 F.3d 321 (4th Cir.2010) ...............................................................................10

United States v. Lynn,
    592 F.3d 572 (4th Cir. 2010) ..............................................................................30

United States v. Mabry,
    3 F.3d 244 (8th Cir.1993) ...................................................................................25

United States v. McGhee,
    (E.D. Va., 2012) ..................................................................................................20

United States v. Nale,
    101 F.3d 1000 (4th Cir.1996) ......................................................35

United States v. Perez,
    661 F.3d 189 (4th Cir. 2011) ......................................................31

United States. v. Redd,
    161 F.3d 793 (4th Cir.1998) ......................................................20

United States v. Sayles,
    296 F.3d 219 (4th Cir.2002) ......................................................29

United States v. Scott,
    424 F.3d 431 (4th Cir.2005) ......................................................24

United States v. Singleton,
    902 F.2d 471 (6th Cir.1990) ......................................................24

United States v. Slade,
    631 F.3d 185 (4th Cir. 2011) ...........................................9, 26, 29

United States v. Smith,
    62 F.3d 641 (4th Cir. 1995) ......................................................31

United States v. United States District Court,
    407 U.S. 297 (1972).................................................................15

United States v. Wilson,
    135 F.3d 291 (4th Cir.1998) ................................................10, 11

## STATUTES

18 U.S.C. § 921(a)(3).................................................................20
18 U.S.C. § 922(g)(1)...............................................2, 3, 7, 8, 23, 24, 26
18 U.S.C. § 924(c) ....................................................................35
18 U.S.C. § 924(c)(1)........................................................7, 19, 23
18 U.S.C. § 924(c)(1)(A) ..............................................................2
18 U.S.C. § 924(g)(1)..................................................................37
18 U.S.C. § 1951(a) ..................................................................2, 7
18 U.S.C. § 3231 ........................................................................1
18 U.S.C. § 3742........................................................................1

21 U.S.C. § 841(a)(1)...............................................................................3
28 U.S.C. § 1291......................................................................................1

U.S.S.G. § 3B1.1 ...............................................................................26, 30
U.S.S.G. § 3B1.1(b)................................................................................9
U.S.S.G. § 3C1.1....................................................................4, 30, 31, 33

## RULES

Fed. R. App. P. 4(b)(1),(b)(6) ..............................................................1
Fed. R. Crim. P. 29(b .............................................................................3

## OTHER AUTHORITIES

*Webster's Third New International Dictionary,* 1372 (1986)..................................27

## <u>STATEMENT OF JURISDICTION</u>

The United States District Court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. That court entered the judgment of conviction and sentence on January 23, 2014. The Appellant timely filed his appeal on February 6, 2014. See Fed. R. App. P. 4(b)(1),(b)(6). Therefore, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether trial court erred by refusing to grant a mistrial or offer a curative instruction after the prosecution made repeated improper statements that violated the Appellant's due process right to a fair trial not declaring a mistrial after the attorney for the government introduced evidence that had been previously ordered inadmissible by the trial court? (JA 435)

II.   Whether the trial court erred by admitting evidence seized as a result of an unjustified warrantless search in violation of the Appellant's home? (JA22)

III.  Whether the trial Court erred by holding that evidence was sufficient to support the Appellant's conviction of Brandishing a

Firearm During a Crime of Violence, in violation of 18 U.S.C. 924(c)(1)(A)? (JA 363)

IV.    Whether the trial Court erred by holding that evidence was sufficient to support the Appellant's conviction of being a Felon in Possession of Ammunition, in violation of 18 U.S.C. 922(g)(1)? (JA 363)

V.    Whether the trial Court erred by enhancing the Appellant's sentence level based upon his role in the robbery? (JA 533, 650)

VI.    Whether the trial Court erred by failing to grant the Appellant credit for acceptance of responsibility following his guilty plea? (JA 533, 650)

## STATEMENT OF THE CASE

The Appellant was named in a five-count Superseding Indictment returned by an Eastern District of Virginia Grand Jury, Newport News Division. Count One charged him with Interference with Commerce by Robbery, in violation of 18 U.S.C. 1951(a). Count Two charged the Appellant with Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. 924(c)(1)(A). Count Three charged the Appellant with Felon in Possession of a Firearm, in violation of 18 U.S.C. 922(g)(1). Count Four charged the Appellant with being Felon in Possession of

2

Ammunition, in violation of 18 U.S.C. 922(g) (1). Count Five charged the Appellant with Possession with Intent to Distribute Schedule II Controlled Substance, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(C). (JA17)

Prior to trial, the Appellant filed a motion to suppress evidence found in a house at the time of his arrest. (JA 22) On May 1, 2013, the United States District Court for the Eastern District of Virginia, Norfolk Division conducted a hearing and heard evidence in support of and opposition to that motion. (JA 42) The Court denied the Appellant's Motion to Suppress. (JA99,103)

On May 14, 2013, the Appellant appeared before the Honorable Henry Coke Morgan, Jr., Judge United States District Court for the Eastern District of Virginia and pled guilty to Counts One and Five of the Superseding Indictment. The Appellant did not enter those pleas pursuant to an agreement with the government. (JA 109, 119) The Appellant signed an Agreed Statement of Facts. This Court accepted the Appellant's pleas and found him guilty of those two offenses.

The District Court, sitting with a jury, conducted a trial of the Appellant on the remaining three counts in the Superseding Indictment. At the close of the government's evidence, the trial court entered a judgment of acquittal under Fed.R.Crim.P. 29(b) dismissing Count Three. (JA 363)

3

Upon consideration of evidence from both parties, the jury found the Appellant guilty of Counts Two and Four. (JA 529) The court continued sentencing pending the completion of a presentence report.

On January 23, 2014, the trial court conducted a hearing in contemplation of the presentence report, the applicable sentencing guidelines and argument from counsel. Counsel for the Appellant objected to government motions to enhance the Appellant's sentence due to his role in the offense, and obstruction under USC 3C1.1. (JA 582) The Appellant further moved the court to reduce the Appellant's Offense level to credit his Acceptance of Responsibility in pleading guilty to Counts One and Five. The Court sentenced the Appellant to serve 235 months' incarceration.

The Appellant timely noted his appeal to this Court

## STATEMENT OF FACTS

On August 21, 2012, the Appellant entered a pharmacy and handed an employee of that store a note that stated, "Give Me All The Percocet/ Oxycodone or I will Shoot. Don't – try me." (JA 173) The store employee, Michael Shelton ("Shelton") surrendered a quantity of narcotics to the Appellant. The Appellant ultimately stole 2036 Oxycodone pills from that store.

On August 21, 2012, officers within the Hampton Police Division responded to the pharmacy, processed the area for fingerprints and recovered the note at issue. (JA 227) Relying upon fingerprint information and a statement from an alleged victim, Hampton Police officers developed the Appellant as a suspect. The Appellant's address at that time was 2509 Mandy Lane, Richmond Virginia.

Hampton Police officers sought a warrant for the Appellant's arrest. On August 23, 2012 at 10:26 a magistrate issued arrest warrants alleging that the Appellant committed the robbery at issue. At approximately 11:00 p.m., Richmond Police officers arrived at 2509 Mandy Lane, Richmond Virginia. (JA 77)

Upon arrival, Richmond Police officers knocked on the door at the Mandy Lane address. The Appellant was inside. He opened the front door. As he opened the door, police officers arrested the Appellant without incident. (JA 83)

After placing the Appellant in handcuffs, an officer asked the Appellant for consent to search the home. The Appellant denied consent. (JA 84) Undeterred, several Richmond Police Officers entered the residence and began to search the interior of the dwelling. At the time of the arrest, no

police agency had yet obtained a warrant authorizing the search of the dwelling.

Officers subsequently sought the issuance of a search warrant. At 3:53 a.m. the following morning, a magistrate issued a warrant authorizing the search of the address at issue. Several items of evidence were seized as a result of the searches described supra.

In the search of that home, police found some of the pills that had been removed from the pharmacy. Police found ammunition but no firearm. (JA 292) Police also located cell phones that contained text messages referencing the planning of the robbery and sale of the stolen pills.

At trial, Shelton testified that he thought the Appellant pointed a gun at him during the robbery. (JA 172) The Appellant testified as well. He admitted committing the robbery. He revealed that he used a cell phone as a simulated weapon to commit the robbery. (JA 400) He ingested stolen pills to sustain his addiction to Oxycodone. He testified that he sold some of the pills to further sustain his addiction.

## <u>SUMMARY OF ARGUMENT</u>

The Appellant concedes that he robbed a pharmacy, stole prescription drugs and sold those drugs to sustain his drug habit. He pled guilty to

offenses arising out of that conduct. The Appellant further acknowledges that he is a prohibited person that may not possess weapons or ammunition.

While the Appellant acknowledges that he is guilty of Interference with Commerce by Robbery, in violation of 18 U.S.C. 1951(a) and Possession with Intent to Distribute Schedule II Controlled Substance, the evidence adduced at trial did not establish that he used a weapon to commit the robbery or possessed ammunition. To sustain a conviction under 18 U.S.C. § 924(c)(1), a trial court must find that the Appellant committed a crime of violence while using an object that meets the statutory definition of a weapon. The evidence in the instant case reveals that the Appellant committed the subject violent crime while using a simulated firearm. The government was not able to demonstrate that the object used was a weapon. The trial court erred in fining the Appellant guilty of 18 U.S.C. § 924(c)(1).

To prove a violation of 18 U.S.C. § 922(g)(1) the government must prove that: (1) the defendant is a prohibited person and; (2) the defendant intentionally possessed the ammunition. The facts in the Appellant's case reveal that the government was only able to establish that the Appellant was located to be in proximity of prohibited ammunition. No evidence intimated that the Appellant exercised any dominion or control over any ammunition.

Thus, the trial Court erred by finding the Appellant guilty of possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The day after the robbery, police officers entered a dwelling where the Appellant was sleeping. The officers did not possess a search warrant authorizing that entry. Officers subsequently found ammunition in that dwelling. The trial court erred in not suppressing the evidence of the ammunition that police recovered subsequent to that illegal warrantless entry.

The Appellant testified at trial. During cross-examination, the Attorney for the United States improperly alerted the jury that the Appellant would face a significant mandatory sentence if convicted. The Attorney made these comments under the guise of impeachment questions. The trial court admonished the Attorney for United States to avoid issues of punishment during the cross-examination. The Attorney for the United States ignored those warnings. The trial Court erred by: (1) not granting the Appellant's request for a mistrial; or (2) issuing a curative statement to the jury following the prosecutors' inappropriate statement.

At sentencing, the court erred again by enhancing the Appellant's sentencing guidelines due to his alleged: (1) obstruction and (2) leadership role in the offense. The trial court also failed to grant the Appellant

acceptance of responsibility for pleading guilty to the robbery and drug distribution.

The trial court erred at every stage of the proceedings against the Appellant. Each mistake individually warrants reversal. The trial court's flawed constitutional evidentiary ruling, factual findings, procedure and sentencing require this Court to overturn the Appellant's conviction.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion for acquittal based upon a claim of insufficient evidence is also reviewed de novo. United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005). In assessing a district court's decision on a suppression issue, this Court reviews the trial court's factual findings for clear error and its legal determinations de novo. United States v. Lewis, 606 F.3d 193, 197 (4th Cir.2010). The Court reviews a district court determination of enhancement of offense level under USSG § 3B1.1(b).3 for "plain" error. U.S. v. Slade, 631 F.3d 185, 192 (4th Cir., 2011) "It is well settled that a grant or denial of a motion for mistrial is within the sound discretion of the trial court, and will not be overturned absent a clear abuse of that discretion." United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1995)(internal citations omitted).

# **ARGUMENT**

## **I. THE DISTRICT COURT ABUSED ITS DISCRETION BY REFUSING TO GRANT A MISTRIAL OR OFFER A CURRATIVE INSTRUCTION AFTER THE PROSECUTION IGNORED ADMOSHMENT BY THE COURT AND MADE REPEATED REFERENCES TO PUNISHMENT PROVISONS IN FRONT OF THE JURY:**

A prosecutor's improper remarks may, "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Lighty, 616 F.3d 321, 359 (4th Cir.2010) (quoting United States v. Wilson, 135 F.3d 291, 297 (4th Cir.1998))(discussing closing argument). A court should consider several factors when determining if a prosecutor's remarks or conduct were unduly prejudicial: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995) (quoting United States v. Harrison,  716 F.2d 1050,  1052 (4th Cir. 1983)). Appellate courts must also consider whether the trial court gave the jury a curative instruction, Id.,  716 F.2d at 1053.

10

In the context of prosecutorial misconduct, a defendant may obtain a new trial by demonstrating that the government made improper remarks that prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Higgs, 353 F.3d 281, 330 (4th Cir.2003). This Court has, "not hesitated to grant a new trial on the basis of prosecutorial misconduct where a defendant has established prejudice, even if the government's case is strong." See, e.g., Wilson, 135 F.3d at 302 (remanding for a new trial based on the prosecutor's improper, prejudicial statements despite "fully recognizing that the drug trafficking evidence ... was strong.") See also United States v. Chong Lam, 102 U.S.P.Q.2d 1937, 677 F.3d 190 (4th Cir. 2012)(Floyd dissenting)

In the case at bar, the Appellant testified that he brandished a simulated weapon during the robbery. During cross examination, the Attorney for the United States repeatedly tried to inform the jury that if convicted, the Appellant would face mandatory jail time. One exchange follows:

> PROSECUTOR: And the jury can certainly consider the fact that you are a convicted felon on a crime of….
> DEFENSE COUNSEL: Objection
> THE COURT: Sustained
> (three questions later)
>
> PROSECUTOR: Now, you're aware that possessing a firearm in furtherance of the robbery crime is a serious crime, aren't you?

11

> APPELLANT. All of them are serious crimes, but yeah.
> PROSECUTOR: But the firearm charge that you're facing carries mandatory --
> DEFENSE COUNSEL: Objection. Objection.
> THE COURT: Sustained. Mr. Zlotnick.
> PROSECUTOR: Yes, Your Honor.
> THE COURT: I cautioned you that you could go too far with this.
>
> PROSECUTOR: Mr. Cheatham, you admit that you're facing a lot of jail time?
> DEFENSE COUNSEL: Your Honor, I object, and I would ask to approach
> THE COURT: All right.
> (Side-bar conference.)
> THE COURT: Mr. Zlotnick, what in the world are you doing (JA. 435)

Following this discourse, Counsel for the Appellant asked for a mistrial. The trial Court sustained the objection but denied the motion for mistrial and did not issue a curative instruction to the jurors.

The Appellant's credibility was the only issue in the trial of Counts Two and Four of the Indictment. If the jury believed his testimony he would be acquitted. By addressing sentencing issues, the prosecution impermissibly directed the jurors to contemplate the punishment during the guilt phase. This irrevocably placed the consequences of conviction in the fact-finders consciousness. The erroneous questions inextricably tainted the Appellant's testimony. The "issue affected" by the error is nothing less than guilt itself. Thus, the statements made the Appellant's trial so unfair that the resulting conviction a denial of his right to procedural due process.

12

The remarks at issue were far from isolated. The prosecutor asked three separate questions about sentencing. The prosecutor ignored repeated admonitions from the Court to avoid the issue of punishment during cross-examination. The remarks at issue were cumulative and numerous

The government did not recover a working firearm. Therefore, the evidence concerning the true nature of the item brandished during the robbery was scant. Likewise, the Appellant was not in actual possession of ammunition found in this case. No forensic evidence corroborated Counts Two or Four. The Appellant's testimony offered wholly reasonable explanations of his innocence. In the ammunition case, there was absolutely no evidence to refute his testimony that he was unaware of its presence in the home where he was found. Therefore, absent the unacceptable attack the government's evidence would not have established the Appellant's guilt.

The prosecution's efforts were calculated and intentional. In his last of the offensive comments, the prosecution directly told the jurors that conviction carried a "mandatory" term. The purpose of this comment was to divert the jurors' attention away from the slight nature of the government's case and have them focus on the punishment the Appellant was facing.

Without a curative instruction the jurors could not reasonably avoid focusing on the issue that the prosecution was so intent in placing before

them. Forgetting objected information, "has been described as a mental gymnastic which is beyond, not only their powers [referring to the jury] but anybody else's." Delli Paoli v. United States, 352 U.S. 232, 247 (1957). (Frankfurter, J, dissenting).

No reasonable argument could be made in the case at bar that the evidence against the Appellant is so abundant that there is no reasonable probability that the jury's verdict was influenced by the jury's exposure to this later-excluded comment. Here, there is a "strong indication that the [inappropriate comment] is so powerful that a jury could not ignore it and that the defendant was harmed as a result." United States v. Jones, 907 F.2d. That difficulty makes it quite important that the curative message from the Court to the jury be clear. The trial court took no steps to mitigate the effects of the prosecution's misconduct. Although it is doubtful that the curative instruction regarding the evidence of the punishment could have fixed the problem even if issued by the court, the trial Court abused its discretion by failing to grant the mistrial or at least a curative instruction. Under these circumstances, this Court must conclude that the integrity of the trial result is substantially in doubt. This Court should reverse the trial court's finding of guilt.

## II. THE TRIAL COURT ERRED BY NOT SUPRESSING EVIDENCE FOUND AFTER ILLEGAL ENTRY AND SEARCH OF THE APPELLANT'S HOME

The United States Constitution guarantees the people's right to be secure in their persons and houses against unreasonable searches and seizures. The "physical entry of the home is the chief evil against which the working of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972). It is a basic principle of Fourth Amendment jurisprudence that warrantless searches and seizures of a home are presumptively unreasonable. Smith v. Tolley, 960 F.Supp. 977 (E.D. Va., 1997) at 984 quoting Payton, 445 U.S. at 586. The Fourth Amendment has drawn a firm line at the entrance to the house with respect to both searches and seizures of property and persons. Where a search is conducted without a warrant, the prosecution bears the heavy burden of proving the facts that justify the search under one of the recognized exceptions. United States v. Jeffers, 342 U.S. 48, 51 (1951);

In the present case, Richmond Police officers asked the Appellant for consent to search after placing him under arrest. The Appellant denied consent. Officers entered the home absent his permission. This entry was not supported by a warrant and thus illegal.

15

The trial Court held that Richmond officers were entitled to enter the home prior to the acquisition of a search warrant under the "protective sweep" exception to warrantless entry of a home. (JA 99) Under this doctrine, authorities are entitled to search "incident to the arrest ... as a precautionary matter and without probable cause or reasonable suspicion, ... closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." United States v. Jones, 667 F.3d 477 (4th Cir. 2012, citing Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) Officers may only perform a further "protective sweep," beyond the immediately adjoining areas, when they have "articulable facts which, taken together with the rational inferences from which those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id., The authority for this sweep extends only to places where a person may be found.

In the case at bar, Richmond Police Officer, K. Knudsen testified that when he arrived at the Mandy Lane address he looked into the home and observed the Appellant crawl on the floor prior to exiting the house and submit peacefully to arrest. Knudesn asserted apprehension due to: (1) lights being on in other areas of the home; (2) a vehicle parked in front of the

home that could carry more than occupant; and (3) information concerning the Appellant's possible gang affiliation.

These facts, however, do not articulate facts to justify a protective sweep entry. The Appellant was the individual that dropped to the floor. Thus, there was no apprehension of other occupants created by that action. Next, all vehicles (other than motorcycles) carry multiple occupants. Also Knudsen acknowledged that he did not know if the car was associated with or had been driven by the Appellant. Therefore, the presence of the vehicle could not support a reasonable belief that the home near that vehicle harbored dangerous persons. Knudsen did not see any other occupants of the home. The Appellant was the subject of the warrant.

The officer at issue stated plainly that he conducted a protective search, "because we didn't know if there was anyone else in there, and we wanted to make sure there was not an unknown threat." (JA 85) This explains the purpose of the search but not the justification. The protective sweep exception to warrantless searches does not give police blanket authority to search every home to determine *if* there is an unknown threat. In light of the above, the officers did not have legal justification to enter the home where the Appellant was located prior to acquiring a warrant.

17

When there is an illegal entry followed by a valid search the government often relies upon the "independent source" doctrine to avoid suppression. That maxim provides that:

> The interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred. <u>Nix v. Williams</u>, 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984)

Suppression following an illegal search is the appropriate action "where its remedial objectives are thought most efficaciously served," <u>United States v. Calandra</u>, 414 U. S. 338, 348 (1974)—that is, "where its deterrence benefits outweigh its `substantial social costs,'" <u>United States v. Leon</u>, 468 U. S. 897, at 907 (1984), This protection must be applied in a manner that, "provide[s] government agents with an affirmative incentive not to engage in unconstitutional violations of the privacy of the home," <u>Id.</u>, 468 U.S., at 817, (1984) (dissenting opinion). The exclusionary rule is principally designed to deter violations of the Fourth Amendment. See <u>Id.</u>, <u>Elkins v. United States,</u> 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). By excluding evidence discovered in violation of the Fourth Amendment, the rule "compels" respect for the constitutional guaranty in the

only effectively available way, by removing the incentive to disregard it."

<u>Elkins</u>., at 217, 80 S.Ct., at 1444.

The officers in the case at issue entered the home where the Appellant was located prior to the issuance of a search warrant. This entrance was in absence of exigent circumstances. Most offensively, the officers asked for permission to search demonstrating an awareness that they did not have legal authorization to enter. Justification of this clear violation of the constitution under the guise of inevitable discovery or independent source rationale eviscerates the constitutional protection of the Appellant's most basic privacy expectation. The trial court erred by not implementing suppression to provide government agents with an incentive not to engage in future unconstitutional violations. Any other result "emasculates the Warrant Clause and provides an intolerable incentive for warrantless searches." <u>Carter v. United States</u>, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988.) (MARSALL, T., dissenting).

**III. THE TRIAL COURT ERRED IN FINDING THAT SUFFICIENT EVIDENCE EXISTED TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT WAS GUILTY OF 18 U.S.C. § 924(c)(1):**

To sustain a conviction under 18 U.S.C. § 924(c)(1), the Court must find that a firearm was used, carried, or possessed during and in relation to a crime of violence or drug trafficking crime. The government must prove

that the item possessed meets the definition of a firearm. A firearm is defined as: "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device " 18 U.S.C. § 921(a)(3).

A jury may not merely speculate as to whether an item described by a witness was a real firearm and not a fake or toy gun. See generally United States v. McGhee (E.D. Va., 2012). Therefore, to satisfy its burden of proof on these elements, the government is usually required to seize a weapon alleged to have been used in such fashion and present evidence of the weapon's intended design purpose. When the government fails to seize or offer a weapon into evidence the prosecution has a greater challenge in sustaining a 924(c) conviction. Without a weapon, the government may rely on eyewitness testimony. However, eyewitness testimony can only be sufficient for the government to meet its burden of proof under Sec. 921(a)(3), if the evidence "provides a rational basis for the jury to find that the object observed by eyewitnesses "was, in fact, a firearm." United States. v. Redd, 161 F.3d 793 (C.A.4 (Va.), 1998) citing United States v. Castillo, 924 F.2d 1227, 1230 (2d Cir.1991.)

This Court has frequently held that the testimony of robbery victims can be sufficient for a rational jury to find both a defendant guilty of violating § 924(c).   In those cases however, this Court finds that the eyewitness observations along with the direct and circumstantial evidence provides a rational basis to conclude that the item at issue was a working firearm.  See United States v. Baylor (4th Cir., 2013); U.S. v. Jones, 907 F.2d 456 (C.A.4 (S.C.), 1990).  The evidence in the case bar is different from those cases for several reasons.

First, the government's witness did not clearly identify the weapon as an item designed to expel a projectile. The government relied solely on the testimony the victim of the robbery, Shelton.  Shelton, however, had extreme difficulty remembering the events surrounding the brandishing of the item the government alleged to be a weapon.  He made contradictory statements about whether the item at issue had an ammunitions "clip" (JA 204) Shelton further acknowledged that he merely made "assumptions" about the nature of the item he believed could have been a gun (JA 205).  He acknowledged that his initial testimony concerning the gun was unclear.   (JA 217) Although he called the item a "gun" he did not testify that he had any specific knowledge about firearms. Nothing in Shelton's description

established that the alleged weapon was a real gun rather than a simulated weapon.

Second, the defense presented uncontroverted testimony that the robber used a simulated weapon. In contrast to Shelton, the Appellant gave clear and effective testimony. He acknowledged committing the robbery. He described the planning of the crime in great detail. He explained that he did not possess a firearm at the time of the robbery because: (1) his status as a prohibited person made it difficult to acquire a gun (2) he feared for his children's safety near weapons and (3) his sister's suicide created an aversion to guns (T. 332). The Appellant stated that when "casing" pharmacies as potential theft targets, he spoke with former pharmacy clerks. Those clerks informed him that store protocol directed employees to comply with intended robbers without determining whether the perpetrator was actually armed. Accordingly, the Appellant determined that he could commit such a crime without an actual weapon. (JA 401) The Appellant admitted that when he used a square shaped "Trac" phone to simulate a gun to facilitate the robbery.

Third, physical evidence recovered bellied the government theory that the Appellant possessed a firearm during the robbery. Police agents arrested the Appellant hours after the robbery. At the time of his arrest, police agents

22

performed a detailed search of the home where the Appellant.  The agents found all items incident to the commission of the robbery.  Police did not find an actual weapon consistent with Shelton's description.  The agents did find cell phones consistent with the one the Appellant used during the robbery.  The temporal proximity of the police search of The Appellant's home demonstrates that The Appellant would not have had time to dispose of an actual firearm if one had been used.  When police located cell phones they actually corroborated the Appellant's case by finding the simulated weapon used to commit the crime.

Circumstantial and direct evidence contradicted rather than supported the government's supposition that the defendant used a real weapon. The evidence presented at trial did not establish beyond a reasonable doubt that the Appellant used an actual or real firearm during or in furtherance of the offenses of conviction. Therefore, the trial court erred in holding that evidence at trial was sufficient to support a conviction for violation of 18 U.S.C. § 924(c)(1).

**IV. THE TRIAL COURT ERRED IN FINDING THAT SUFFICIENT EVIDENCE EXISTED TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT WAS GUILTY OF 18 U.S.C. § 922(g)(1)**:

18 U.S.C. § 922(g)(1) provides in pertinent part:

> [i]t shall be unlawful for any person ... who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition. 18 U.S.C. § 922(g)(1)

When the government's evidence fails to establish actual possession of ammunition, a trial court may only sustain a conviction when the government produces evidence that shows, "ownership, dominion, or control over the contraband itself" United States v. Lawing, 703 F.3d 229 (4th Cir, 2012) quoting United States v. Ferg, 504 F.2d 914, 916–17 (5th Cir.1974)). To establish evidence of such constructive possession under § 922(g)(1), the government must also prove intent. Thus, the government must prove that the defendant *intentionally* possessed the ammunition United States v. Scott, 424 F.3d 431, 435-36 (4th Cir.2005) (emphasis added). Mere proximity of ammunition to a [defendant] goes only to its accessibility, not to the dominion or control which must be proved to establish possession." United States v. Singleton, 902 F.2d 471, 472-73 (6th Cir.1990)

Finding a firearm in a defendant's home permits a mere inference of constructive possession. See United States v. Jackson, 124 F.3d 607, 610 (4th Cir.1997)); U.S. v. Japanese Rifle, 571 F.Supp.2d 685 (E.D. Va., 2008) Presence of a firearm at the defendant's residence suffices to prove constructive possession only "in the absence of evidence refuting the normal

inference of dominion." Id., citing United States v. Mabry, 3 F.3d 244, 247 (8th Cir.1993)  Ultimately constructive possession requires elements of regular proximity and awareness of the firearms, such as: (1) behavior; (2) where the defendant's apartment was not so large or; (3)  the contraband was not so well hidden, as to prohibit a reasonable fact finder from concluding that the defendant was aware of its presence." See United States v. Shorter, 328 F.3d 167, 172 (4th Cir.2003); United States v. Gallimore, 247 F.3d 134, 136-37 (4th Cir.2001); See also United States v. Livas, 867 F.2d 609, 1989 WL 5578, at *3 (4th Cir. Jan. 25, 1989) (unpublished opinion discussing behavior consistent with constructive possession).

In the instant case, the government failed to demonstrate that the Appellant had the intent to exercise dominion and control over the ammunition at issue.  First, the home where the items were found belonged to the Appellant's mother, Hazel Cheatham ("Mrs. Cheatham.")  Agents found ammunition in two places in the home.  One baggy of ammunition at issue was found in an entertainment center room where Mrs. Cheatham slept and kept things that belonged to her deceased husband, the Appellant's father. (JA 373) The Appellant did not store things in that room and rarely entered the room.  There was no evidence suggesting that Mrs. Cheatham and the Appellant jointly possessed any items in that room.

Agents also found ammunition in a cup on a rolling table in a common area of the house. No testimony placed the Appellant in that room of the house. The Appellant's behavior does not indicate any awareness of the ammunition in either location. The location of that stash of ammunition does not infer that the Appellant's presence in the home can infer his intentional possession of that ammunition.

The government's evidence merely proved that the Appellant was in the same house as the ammunition. This evidence was not sufficient to prove the Appellant intentionally exercised any dominion or control over either set of ammunition. The trial Court erred by finding the Appellant guilty of possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## V. THE TRIAL ERRED BY ENHANCING THE APPELLANT'S SENTENCE LEVEL BASED UPON HIS ROLE IN THE ROBBERY:

A sentencing enhancement under USSG § 3B1.1 is warranted if, "the defendant was a manager or supervisor (but not an organizer or leader.)" To qualify for such an enhancement, the defendant must have managed or supervised "one or more other participants." USSG § 3B1.1, cmt. n.2. This enhancement is appropriate when evidence demonstrates that the defendant, "controlled the activities of other participants" or "exercised management responsibility." United States v. Slade, 631 F.3d 185, 190 (4th Cir. 2011) (citing United States v. Bartley, 230 F.3d 667, 673-74 (4th Cir. 2000)).

26

Although the Guidelines do not define the term manager, this Court utilizes the dictionary definition: "a person whose work or profession is the management of a specified thing (as a business, an institution, or a particular phase or activity within a business or institution).'" United States v. Chambers, 985 F.2d 1263, 1268 (4th Cir.1993) (quoting *Webster's Third New International Dictionary,* 1372 (1986) (emphasis omitted)).

The evidence in the case at bar does not demonstrate that the Appellant managed or controlled the actions of other participants. In a sentencing hearing, the United States presented evidence of text communications that occurred days before the robbery between the Appellant and Ezekiel Walton ("Zeek"). The government argued that the messages demonstrated that the Appellant controlled the Zeek's activities. In pertinent part those messages provided:

> Message 1
> Appellant: "I'm not going to drive to send money, I'd rather make it."
> Zeek:      "We can do that" (JA 593)
>
> Message 2
> Appellant: "It's going down. Niggers need this shit. I kind of contemplated yesterday, but shit done hit the fan."

These messages do not show the Appellant directing Zeek's behavior. Instead, the communications show an interaction in which the Appellant describes his intentions on taking unilateral actions.

Messages sent the day of the robbery show the Appellant and Zeek to be equals.

> Appellant: "Man, might need to move today. Fuck waiting."
> Zeek: "Let me drive, and you can keep 80 percent of the proceeds. Or if you know somebody or somewhere straight cash, I'm all in on them type of jaintz." (JA.594)

Here, the Appellant merely expresses his desire to commit the crime.   Zeek establishes the division of proceeds and makes transportation arrangements. Zeek is controlling the actions of the Appellant.

The government produced one message after the robbery (JA. 595)

> Appellant: "Man, you need to slow down. You being too hot. And you need to erase that picture and all them messages to Byron. Nigger wax called me knowing you did hot shit.

This message occurred after the robbery and addresses the participants' actions after that event. As such it has little evidentiary value to show that the Appellant exercised managerial control over Zeek's participation in the robbery.   Rather, this message demonstrates the Appellants advice that Zeek should not expose his (Zeek's) criminal actions to others.

The instant crime is very simple.  The Appellant was a prescription drug addict.  He alone committed a robbery, stole pills and attempted to sell them to other drug addicts.  The recipients of the Appellant's stolen pills are

28

not criminally responsible for the commission of the robbery or distribution of the pills. The Appellant is a seller and they are buyers. Those persons are merely customers for the stolen pills. The Appellant did not control those buyers' activities or exercise management responsibility over them. The Appellant did not ever exercise authority over any person.

This case is analogous to this Court's decision in, U.S. v. Slade, 631 F.3d 185 (4th Cir, 2011.) In Slade, a presentence report revealed that a co-conspirator drove for the defendant and transported contraband. This Court held that those facts did, "not justify imposition of an enhancement for a management or supervisory role." Id., at 191 The Court opined, "being a buyer [or] seller of illegal drugs, even in league with ... five or more other persons, does not establish that a defendant has functioned as a manager or supervisor of criminal activity." Id., at 191; quoting United States v. Sayles, 296 F.3d 219, 225 (4th Cir.2002)

Here the trial court found that the, "two-point enhancement for his role in the robbery itself with respect to Zeek [did] support the two-point enhancement, and overrules the defendant's objection to that [enhancement]." The evidence described above does not show the Appellant to have exercised managerial control of Zeek's activities as to the robbery. Zeek may have purchased pills and he may have driven the Appellant to the

scene of the crime but no evidence shows that the Appellant's managed or controlled of *any* of Zeek's actions.  The error here is Therefore, the trial court erred in imposing a leadership enhancement pursuant to USSG § 3B1.1.

An appellate court must review an imposed sentence for procedural reasonableness, U.S. v. Lynn, 592 F.3d 572 (4th Cir., 2010).  If a trial court improperly calculates the Guidelines range or selects a sentence based on "clearly erroneous facts." the error satisfies the first step of the three step test for plain error.  Rita v. United States, 551 U.S. 338, 351, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007).  In the present case, the finding of a leadership enhancement is based upon clearly erroneous facts.  As such, this Court must reverse the wrongfully imposed sentence.

## VI. THE TRIAL COURT ERRED BY ENHANCING THE APPELLANT'S SENCE LEVEL BASED UPON OBSTRUCTION UNDER USC § 3C1.1

Under the Sentencing Guidelines, a two level upward adjustment under § 3C1.1 is warranted if:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense. U.S.S.G. § 3C1.1

The covered conduct includes "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 cmt. n.4(b). When a defendant objects to an obstruction of justice enhancement stemming from his testimony at trial, the sentencing court, "must review the evidence and make independent findings necessary to establish [perjury]." United States v. Cartrette (4th Cir., 2012) quoting United States v. Dunnigan, 507 U.S. 87, 95 (1993).

Accordingly, a trial court may not simply apply the enhancement, "whenever the convicted defendant had exercised her constitutional right to testify in her own behalf at trial." United States v. Smith, 62 F.3d 641, 647-48 n.3 (4th Cir. 1995).  For a sentencing court to apply the obstruction of justice enhancement based on a defendant's testimony, the court must find by a preponderance of the evidence that the defendant when testifying under oath (1) gave false testimony, (2) concerning a material matter, (3) with the willful intent to deceive, rather than as a result of confusion, mistake, or faulty memory. United States v. Jones, 308 F.3d 425, 428 n.2 (4th Cir. 2002) (citing Dunnigan, 507 U.S. at 92-98).  To justify an obstruction enhancement a district court must make a specific finding as to each element of perjury, or "provide a finding that clearly establishes each of the three elements." United States v. Perez, 661 F.3d 189, 193 (4th Cir. 2011).

In the instant case, the trial court found obstruction of justice due to: (1) withdrawal of the alibi defense and guilty plea; (2) the Appellant's testimony; and (3) having somebody erase conversations and photographs. (T. 640) The trial court used the rationale that the Appellant's actions "caused" all kinds of preparation on the part of the government." (JA 640)

Appellant's counsel's filed a notice of alibi that reflected eyewitness statements found during trial preparation. The Appellant did not tell any person that he was not present during the commission of the crime. For a trial court to find obstruction merely upon the filing of an alibi defense creates an unacceptable dilemma for a defendant. If his lawyer does not timely file an alibi motion, the defendant might forever lose his right to challenge his identification at the scene of an accident. The filing of this notice is not a statement by the defendant and cannot be used to enhance his sentence if he enters a plea. Here, the Appellant actually testified at trial and acknowledged that he committed the robbery at issue. The alibi filing is not evidence that the Appellant willfully obstructed or impeded, the administration of justice. The trial court erred by holding that counsel's alibi filing constituted obstruction for the purpose of a sentence enhancement.

Additionally, the government's preparation time for trial is not an element of enhancement. If it were, every defendant that pleads not guilty

would have their sentence enhanced pursuant to USC 3C1.1. A court may only apply enhancement for obstruction of justice where defendant **impedes** a government's investigation. A trial court may not apply the enhancement merely because the government has to investigate and prepare for a trial. Therefore, the trial court wrongfully relied upon the filing of a notice of alibi to enhance the Appellant's sentence level

The trial court specifically held that a text message statement by the defendant provides evidence of obstruction. In that text message, the Appellant suggests that a second person should erase pictures on a cell phone. However, there was no evidence that concerning the subject of the pictures. As a result, there is no information supporting the inference that the erased pictures were in any way related to the illegal activity at issue.

The person with whom the Appellant discussed erasing pictures is not a co-conspirator. The trial court assumed, without justification, that the text message regarding erasure is related to the subject offenses. No evidence supports this assumption. The government did not carry its burden of establishing that the erasure of non-descript pictures demonstrates an effort to impede an investigation. Thus, the trial court erred in finding that the statement about erasing text messages amounted to obstruction of justice.

Finally, the Appellant did not give false testimony. The pre-sentence report does not specify any untruthful statements. Rather, the Appellant gave testimony at trial unequivocally acknowledging his commission of the crimes at the heart of the charges against him. He admitted that he committed the robbery and drug distribution at issue in the present case. His testimony was identical to a statement of facts he signed prior to trial.

The Appellant has not indicated any effort to deceive the Court or federal authorities. He has not obstructed or impeded the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction. In light of the above, the trial court's calculation of the sentencing guidelines erroneously included a level enhancement for obstruction of justice. This miscalculation of his guidelines constitutes plain error.

## VII. THE TRIAL COURT ERRED BY NOT GRANTING THE APPELLANT CREDIT FOR ACCEPTANCE OF RESPONSOBILTY

District courts are uniquely qualified to evaluate whether to grant or deny a sentence reduction for acceptance of responsibility. U.S. v. Hargrove, 478 F.3d 195 (4th Cir., 2007) (quoting Elliott v. United States, 332 F.3d 753, 766 (4th Cir.2003)). Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction…will constitute significant evidence of acceptance of

responsibility . . . " U.S.S.G. § 3E1.1 at cmt. n. 3.  The commentary to U.S.S.G. § 3E1.1 explains that, "a defendant may remain silent in respect to relevant conduct . . . without affecting his ability to obtain a reduction under this subsection."  To earn a reduction for acceptance, a defendant must, "clearly recognize and affirmatively accept personal responsibility for his criminal conduct." United States v. Maldonado (4th Cir., 2011) (quoting United States v. Nale, 101 F.3d 1000, 1005 (4th Cir. 1996)).

The Fourth Circuit has explicitly rejected the, "all or nothing" approach to acceptance of responsibility.  Thus, a criminal defendant may receive credit for acceptance of responsibility if he pleads guilty to some but not all convicted offenses. See United States v. Nale, 101 F.3d 1000, 1005 (4th Cir.1996); See also Hargrove, 478 F.3d 195, 205 (4th Cir., 2007) A sentencing court should grant the reduction if, inter alia, the plea exhibits: a voluntary termination or withdrawal from criminal conduct; assistance to authorities; and sufficient acceptance of responsibility.

In U.S. v. Hargrove, 478 F.3d 195 (4th Cir., 2007) this Court considered a matter nearly identical to the case at bar.  There, a defendant pleaded guilty to three drug counts and was then tried and convicted of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c).  In calculating his guidelines sentence, the district court

denied that defendant a two-level reduction in offense level for the drug counts for acceptance of responsibility. This Court explicitly held that a defendant does not have to, "plead guilty to all criminal conduct before a sentencing court may exercise its discretion to grant a reduction for acceptance of responsibility." U.S. v. Hargrove, 478 F.3d 195, 205 (4th Cir. 2007). This Court reversed the district court sentence and remanded for resentencing.

In the instant case, the trial court rejected the Appellant's argument for acceptance of responsibility and failed to address reasons for doing so. The Appellant was charged with committing five felony offenses arising out the August 21, 2012 robbery of a pharmacy and subsequent sale of narcotics stolen during that robbery. The primary offenses at issue were: (1) the robbery of the store; (2) theft of oxycodone from this store and; (3) use and distribution of the drug proceeds from the store. The Appellant admitted that he "deliberately placed the victim in fear during the robbery." (JA 716) He also fully acknowledged he robbed the pharmacy with the intent to acquire oxycodone and distribute it. (JA 717)

The Appellant completely withdrew from criminal conduct following his arrest. He openly admits his financial and medical motivations for committing these crimes (PSR 10). He makes no attempt to marginalize his

actions. He clearly recognizes and affirmatively accepts personal responsibility for his criminal conduct.

Prior to trial, the government encouraged the Appellant to plead guilty to all indictments, including possession of a firearm by a convicted felon in violation of 18 USSC 924(g)(1). The government did not at any time offer to dismiss this charge in exchange for a guilty plea to other offenses. Trial revealed that the Appellant was not guilty of this offense. It is inequitable to refuse him credit for accepting responsibility for the core offenses of robbery and distribution of drugs, merely because he refused to acknowledge acceptance of the offense and a crime (18 USSC 924(g)(1)) that he did not commit.

The Appellant has not merely, "gone through the motions" or taken minimal efforts designed to achieve a sentencing benefit. Rather, he earnestly admits his truthful role in this criminal enterprise. He testified at trial under oath that he committed a robbery and intended to sell illegal proceeds of that crime. He indisputably acknowledged his criminal behavior and actions. He endorsed an agreed statement of facts. Although not required, he subjected himself to vigorous cross-examination by the Attorney for the United States as to the motive and details of those crimes. He steadfastly maintained his guilt. He has clearly demonstrated acceptance

of responsibility for his offenses. His sentence does not presently reflect the guideline's goal of crediting defendants for affirmatively acknowledging their wrongdoing. Thus, the trial court erred (1) by not reducing his adjusted offense level to reflect his acceptance or (2) at least outlining reasons why acceptance was not appropriate.

## **CONCLUSION**

For the above stated reasons, the Appellant asserts that the district court erred Accordingly, the Appellant hereby requests that this Honorable Court REVERSE and DISMISS this case.

Respectfully submitted,
Marcellus Cheatham


_____/s/_____
Vaughan C. Jones, Esquire
Virginia Bar No. 41010
Attorney for Marcellus Cheatham
1622 W. Main Street
Richmond, Virginia 23220
(804) 788-8880
(888) 816-0116 facsimile
vaughan@vaughancjones.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1. This brief has been prepared with Word, using a proportionally spaced serif typeface, Times New Roman, 14 point font.

2. Exclusive of: table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service this brief contains <u>8,108</u> words.

3. I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line printout.


_____/s/_____
Vaughan C. Jones, Esquire
Virginia Bar No. 41010
Attorney for Marcellus Cheatham
1622 W. Main Street
Richmond, Virginia 23220
(804) 788-8880
(888) 816-0116 facsimile
vaughan@vaughancjones.com

## <u>CERTIFICATE OF FILING AND SERVICE</u>

On the 12th day of June, 2014, I filed the required copies of the foregoing OPENING BRIEF OF APPELLANT with the Clerk of Court via hand delivery and electronically using the CM/ECF system, which will send a notice of electronic filing to:

Howard J. Zlotnick
OFFICE OF THE UNITED STATES ATTOERNEY
Fountain Plaza 3, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
(757) 591-4000
howard.zlotnick@usdoj.gov

Counsel for Appellee


_____/s/_____
Vaughan C. Jones, Esquire
Virginia Bar No. 41010
Attorney for Marcellus Cheatham
1622 W. Main Street
Richmond, Virginia 23220
(804) 788-8880
(888) 816-0116 facsimile
vaughan@vaughancjones.com